IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL OSTBY, et al., | CV 17-124-BLG-SPW-TJC |
| Plaintiffs, | |
| vs. | **FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| YELLOWSTONE COUNTY, | |
| Defendant. | |

Plaintiffs, the Estate of Michael Ostby by and through the court appointed personal representatives, and Nicole Hale, Joe Ostby, and Cassandra Ostby, individually, (collectively, "Plaintiffs"), bring this action against Yellowstone County for negligence and civil rights violations after the decedent, Michael Ostby, committed suicide while being held as a pretrial detainee at the Yellowstone County Detention Facility ("YCDF").  (Doc. 51.)

Presently before the Court is the County's Motion for Judgment on the Pleadings.  (Doc. 56.)  The motion has been referred to the undersigned under 28 U.S.C. § 636(b)(1)(B), and is fully briefed and ripe for the Court's review.

Having considered the parties' submissions, the Court **RECOMMENDS** the County's Motion for Judgment on the Pleadings be **GRANTED**.

/ / /

1

## I.      BACKGROUND

On May 7, 2015, Michael Ostby ("Ostby") was arrested and detained at YCDF.  (Doc. 51 at ¶¶ 16-17.)  On July 1, 2015, Ostby died by suicide by hanging while incarcerated.  (*Id.* at ¶ 2.)

On June 30, 2017, Plaintiffs filed a complaint in state court against Yellowstone County, Billings Clinic, a former employee of Billings Clinic, and RiverStone Health.  (Doc. 1-2.)  The case was removed to this Court on September 21, 2017.  (Doc. 1.)  Thereafter, the County filed cross-claims and third-party complaints against Billings Clinic and RiverStone.  (Docs. 3, 4, 7.)

Eventually, Plaintiffs settled with RiverStone, Billings Clinic and its employee Terry Jesse, and the Court dismissed the County's third-party complaints against RiverStone and Billings Clinic.  (Docs. 5-1 at 7, 10, 69.)

On July 5, 2018, Plaintiffs filed a First Amended Complaint.  (Doc. 51.)  Plaintiffs allege the County was negligent in failing to provide adequate medical and psychiatric care for Ostby at YCDF.  (*Id.*)   Plaintiffs also allege the County violated Ostby's right to adequate medical care under the Fourteenth Amendment to the United States Constitution.  (*Id.*)

The County now moves for partial judgement on the pleadings as to Plaintiffs' 42 U.S.C. § 1983 claim, and the individual claims of Nicole Hale, Joe Ostby and Cassandra Ostby.  (Doc. 56.)

## II.   DISCUSSION

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings."  Fed.R.Civ.P. 12(c).  A Rule 12(c) motion is "functionally identical" to a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *Cafasso, United States ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011).  Thus, the same legal standard "applies to motions brought under either rule."  *Id.*

"Dismissal under Rule 12(b)(6) is proper only when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).  The Court's standard of review under Rule 12(b)(6) is informed by Rule 8(a)(2), which requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Fed. R. Civ. P 8(a)).

3

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A plausibility determination is context specific, and courts must draw on judicial experience and common sense in evaluating a complaint.  *Levitt v. Yelp! Inc.*, 2014 WL 4290615, *10 (9th Cir. 2014).

As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion without converting the motion into one for summary judgment.[1]  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted).  Here, Plaintiffs have presented matters outside the pleadings by filing an affidavit and accompanying exhibits in support of their response brief.  (Doc. 65-1.)  The Court declines to consider this information, or to treat the instant motion as a motion for summary judgment.  Accordingly, the

---

[1] There are two exceptions to this rule.  *Lee*, 250 F.3d at 688.  The Court may consider "material which is properly submitted as part of the complaint," and "may take judicial notice of 'matters of public record.'"  *Id.* at 688-89.  Taking judicial notice does not convert a motion to dismiss into one for summary judgment.  *See United States v. 14.02 Acres of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008).  Neither exception applies here.

Court will analyze the sufficiency of Plaintiffs' First Amended Complaint on the basis of the pleadings alone.

**A.     §1983 Claim Against the County**

Plaintiffs have asserted a claim under 42 U.S.C. § 1983 against the County for violation of Michael Ostby's right to adequate medical care under the Fourteenth Amendment.  (Doc. 51 at ¶¶ 64-72.)  Plaintiffs allege in Count II of the Amended Complaint that the County's deliberate indifference to Ostby's serious medical and emotional needs violated his constitutional rights.  (Doc. 51 at ¶ 69.) The County moves for judgment on the pleadings as to this count on grounds that Plaintiffs have failed to allege a viable *Monell* claim.  Specifically, the County asserts Plaintiffs failed to allege a policy or custom sufficient to establish a basis for municipal liability.

Under 42 U.S.C. § 1983, "[e]very person who, under color of any statute ... custom, or usage of any State ... subjects, or causes to be subjected, any ... person within the jurisdiction of [the United States] to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law."  Municipal entities, such as the County, are considered "persons" under § 1983 and may be sued for causing a constitutional deprivation.  *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978).  But a county "cannot be held liable *solely* because it employs a

tortfeasor – or, in other words, a municipality cannot be held liable under §1983 on

a *respondeat superior* theory." *Id.* at 691 (emphasis in original).  Rather, liability

only attaches where "the municipality itself causes the constitutional violation

through "execution of a government's policy or custom, whether made by its

lawmakers or by those whose edicts or acts may fairly be said to represent official

policy." *Ulrich v. City & Cty. of San Francisco*, 308 F.3d 968, 984 (9th Cir.

2002).

Accordingly, municipal liability may be premised upon: (1) conduct

pursuant to an expressly adopted official policy; (2) by showing a longstanding

practice or custom which constitutes the 'standard operating procedure' of the

municipality; (3) by showing a decision-making official was, as a matter of state

law, a final policymaking authority whose edicts or acts may fairly be said to

represent official policy in the area of decision, (4) by showing that an official with

final policymaking authority either delegated that authority to, or ratified the

decision of, a subordinate, or (5) by showing the municipality failed to train an

employee.  *Ulrich,* 308 F.3d at 984–85; *Rosenbaum v. City & Cty. of San

Francisco*, 484 F.3d 1142, 1155 (9th Cir. 2007); *City of Canton, Ohio v. Harris*,

489 U.S. 378, 388 (1989).  Therefore, to support the first four avenues of

establishing municipal liability, a plaintiff must identify a policy, custom or

practice of the municipality to assert a *Monell* claim.  "A policy is 'a deliberate

6

choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A policy or custom can be one of action or inaction. *Id.* To constitute a 'standard operating procedure' of the local government entity, the custom or practice must be "so persistent and widespread", and "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 691.

A plaintiff must also show a causal connection between the municipal policy and the alleged constitutional violation. *City of Canton*, 489 U.S. at 386. "The 'first inquiry in any case alleging municipal liability under §1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075 (9th Cir. 2016).

In sum, to sufficiently allege *Monell* liability for purposes of Rule (12)(b)(6), a plaintiff must "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference, i.e. show how the deficiency involved was obvious and the constitutional injury

was likely to occur." *Young v. City of Visalia*, 687 F.Supp.2d 1155, 1163 (E.D. Cal. 2010).

Here, Plaintiffs have not identified any specific policy, or alleged any facts to show that a policy or custom of the County caused the alleged constitutional violation.  They allege certain policies of YCDF and the recommendations of the State of Montana were not followed.  (Doc. 51 at ¶¶ 45-47; 56-57.)  But *Monell* liability cannot be based on the failure of an individual or individuals to follow an existing policy.  *See e.g. Ritter v. Marshowski*, 2016 WL 8735667, *3 (D. Nev. March 4, 2016) ("An allegation that the individual defendants failed to follow the municipality's policies and procedures resulted in the constitutional violation negates municipal liability under *Monell* as the individual defendant's actions, and not municipal policies, would have caused the constitutional violation."); *Zachary v. City of Newburgh*, 2014 WL 1508705, *5 (S.D.N.Y. April 2, 2014) (explaining that an alleged failure to follow police policy "is the antithesis of a *Monell* claim").  Rather, liability must be predicated on a municipal policy that causes the constitutional violation.  Plaintiffs do not point to any such policy here.

Plaintiffs do allege, however, that the County failed to provide adequate suicide prevention training.  (Doc. 51 at ¶ 58.e.)  But that allegation was made in relation to Plaintiffs' negligence claim.  More importantly, it fails to allege that a County policy caused the County not to adequately train its staff.  "Only where a

8

failure to train reflects a 'deliberate' or 'conscious' choice by a municipality – a 'policy' as defined by our prior cases – can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389.  The Supreme Court has warned that to adopt a lesser standard of fault and causation would expose municipalities to unprecedented §1983 liability and would result in *de facto respondeat superior* liability in contravention of *Monell*.  *Id.* at 391-92.  The Court explained that "[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee, a §1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."  *Id.* at 392.  Therefore, to assert a *Monell* claim for failure to train, a plaintiff "must demonstrate a 'conscious' or 'deliberate' choice on the part of a municipality" and "allege facts to show the [municipality] 'disregarded the known or obvious consequences that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.'"  *Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1158-59 (9th Cir. 2014) (internal citations omitted).   Plaintiffs have failed to do so here.

Plaintiffs have alleged that other inmates at YCDF died by suicide or attempted suicide by hanging in 2013.  (Doc. 51 at ¶ 41.)  The United States Supreme Court has established that when county policymakers "are on actual or constructive notice that a particular omission in their training program causes

9

[county] employees to violate citizens' constitutional rights, the [county] may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The Court explained that this "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* at 61-62. Generally, however, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62.

Here, Plaintiffs have not alleged that either prior hanging occurrence involved similar constitutional violations by County employees, or that the employees involved in those instances were similarly untrained. In short, Plaintiffs have not alleged a pattern of constitutional violations by YCDF employees resulting in other suicides or hangings which would have provided the County with actual or constructive notice that it was deliberately indifferent in maintaining its training policies.

The Supreme Court has also recognized a possible "narrow range of circumstances" where a pattern of similar constitutional violations may not be necessary. *Connick*, 563 U.S. at 63. The Court did not "foreclose the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-

existing pattern of violations." *Id.* at 64.  That is not the case here.  The totality of Plaintiffs' failure to train allegation is that the County "[f]ailed to adequately train its employees to assess and respond to [Ostby's] risk of suicide."  (Doc. 51 at ¶ 58.e.)  Such a conclusory allegation is plainly not sufficient to support the theory that the unconstitutional consequences of failing to train would be patently obvious.

Therefore, while Plaintiffs have plead facts showing negligence, they have not identified any County policy or custom that caused the alleged lack of medical care, failure to place Ostby on the suicide prevention protocol, improper cell placement, inadequate training, inadequate response for requests for help, or insufficient review of performance of contract medical providers.  Accordingly, Plaintiffs have failed to state a viable §1983 claim against the County.  The County is therefore entitled to judgment on the pleadings as to the §1983 claim.

## B.   Individual Claims of Nicole Hale, Joe Ostby and Cassandra Ostby

Plaintiffs Nicole Hale, Joe Ostby and Cassandra Ostby have asserted claims against the County individually, and in their capacities as court appointed personal representatives of the Estate of Michael Ostby.  The County moves for judgment on the pleadings as to their individual claims only.

Under Montana law, a wrongful death action must be brought by the personal representative of the decedent's estate.  Mont. Code Ann. § 27-1-513.

Wrongful death and survivorship actions must also be brought together in the same case.  Mont. Code Ann. § 27-1-501.  The Montana Supreme Court has held "the decedent's personal representative is the only person who may bring such an action."  *Renville v. Fedrickson*, 101 P.3d 773, 777 (Mont. 2004).  The Court has explained that the personal representative then "holds the proceeds of any damage award for the heirs of the decedent and the award does not become part of the decedent's estate."  *Id.*  Accordingly, the relatives of Michael Ostby cannot bring a wrongful death action in their own names.  Rather, only the Estate has standing to sue for their individual damages.  The County is therefore entitled to judgment on the pleadings as to the individual claims of Nicole Hale, Joe Ostby and Cassandra Ostby.

## III.  CONCLUSION

Although Rule 12(c) does not mention leave to amend, courts have discretion to grant a Rule 12(c) motion with leave to amend.  *Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004); *Pac. W. Grp., Inc. v. Real Time Sols., Inc.*, 321 F. Appx. 566, 569 (9th Cir. 2008) (stating leave to amend should be granted under Rule 12(c) "even if no request is made *unless* amendment would be futile") (emphasis in original).

It appears that it may be possible for Plaintiffs to amend their pleading to properly state a *Monell* claim against the County under § 1983.  But any attempt to

amend to state a wrongful death claim on behalf of the heirs individually would be futile.

Therefore, based on the foregoing, **IT IS RECOMMENDED** that the County's Motion for Judgment on the Pleadings (Doc. 56) be **GRANTED** with leave to amend as to the §1983 against the County, and without leave to amend as to the individual claims of Nicole Hale, Joe Ostby and Cassandra Ostby.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

**IT IS ORDERED**.

DATED this 24th day of January, 2019.

TIMOTHY J. CAVAN
United States Magistrate Judge