FILED
JUN 17 2020
Clerk, U S District Court
District Of Montana
Billings

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| ESTATE OF MICHAEL OSTBY, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> YELLOWSTONE COUNTY, <br><br> Defendant. | CV 17-124-BLG-SPW-TJC <br><br> ORDER |

Before the Court is Yellowstone County's motion to compel answers to interrogatories (Doc. 123) and motion to vacate the trial and related motions deadline (Doc. 125). In response, the Plaintiffs filed a motion for expenses (Doc. 134) incurred in opposing the motions.

I.  **Background**

Yellowstone County's Interrogatory No. 16 asked the Plaintiffs to provide "every incident in which an official of Yellowstone County performed an act pursuant to a policy of the County that violated a United States Constitutional right of Michael Ostby. Please identify the date of the act, the time of the act, the place of the act, the County official who performed the act, the policy of the County that compelled the County official to perform the act, how the policy caused the County official to perform the act, the constitutional right violated by the act, and how the act violated the right." (Doc. 128 at 2).

Yellowstone County's interrogatory No. 17 asked the Plaintiffs to provide "every incident in which an official of Yellowstone County performed an act that violated the County's duty of care to Michael Ostby. Please identify the date of the act, the time of the act, the place of the act, the County official who performed the act, and how the act violated the County's duty of care." (Doc. 128 at 19).

The Plaintiffs provided a combined response to the interrogatories, consisting of seventeen pages of facts and included a table with columns for dates, descriptions of conduct, and persons responsible. (Doc. 128 at 3-19). Yellowstone County wrote the Plaintiffs a letter stating their answers were insufficient and requested supplementation. (Doc. 129). The Plaintiffs provided supplemental responses to the interrogatories with an additional six pages of facts. (Doc. 130 at 14-20).

Yellowstone County again found the responses insufficient and filed this motion to compel the Plaintiffs to answer the interrogatories. At the same time, Yellowstone County filed a motion to vacate the motions deadline and trial date because, in its view, it needed answers to the interrogatories before it could properly file a motion for summary judgment. In response, the Plaintiffs filed a motion for expenses incurred in opposing the motions.

## II. Discussion

### A. Motion to compel

A party may move the Court for an order compelling another party to answer an interrogatory if the other party previously failed to answer a properly submitted interrogatory. Fed. R. Civ. P. 37(a)(3)(B)(iii). An evasive or incomplete answer is treated as a failure to answer. Fed. R. Civ. P. 37(a)(4).

Yellowstone County argues the information is discoverable and therefore the burden shifts to the Plaintiffs to show answering the interrogatories is unduly burdensome. But the question here isn't whether the Plaintiffs should answer the interrogatories; they have. What this discovery dispute boils down to is whether the Plaintiffs' responses are evasive or incomplete to the point the Court should treat them as a failure to answer. After reviewing the Plaintiffs' responses, the Court holds the Plaintiffs' have sufficiently answered the interrogatories, albeit not as perfectly formed as Yellowstone County requested.

Interrogatory 16 asked for the who, what, when, where, and how of the alleged constitutional violations. In response, the Plaintiffs stated Ostby's constitutional rights were violated because "the County's policy did not provide for verification that medical and mental health care was provided in response to Ostby's requests," "[t]he County's practice and policy was not to classify inmates who were a risk to themselves or others," "the policies the County had in place did not incorporate and implement the recommendations from the Montana Strategic Suicide Prevention Plan-2013," "the County failed to adopt the recommendations

in the National Study of Jail Suicide – 20 Years Later," and "the County policy was not to act upon dangerous maintenance issues in cells that had been flagged for repair or replacement." (Doc. 130 at 16-20).

The Plaintiffs then provided, in chart form, specific instances of each policy. For example, one of the alleged unconstitutional policies was the failure to incorporate the Montana Strategic Suicide Prevention Plan-2013. The chart lists several instances of this policy being carried out, such as:

> On May 8, 2015, Ostby attempted suicide and commented he hoped he'd be taken to prison so he could be stabbed and killed. Ostby was not referred for a psychiatric and/or psychological assessment and was not placed on continual observation, as the Montana Strategic Suicide Prevention Plan-2013 recommended. The persons responsible were Officers G. Dunker, Webb, Reiter, Wong, and J. Dunker, as well as other officials with access to the Prisoner Progress Report.

(Doc. 130 at 9). Another of the alleged unconstitutional policies was to not verify that medical and mental health care was provided in response to Ostby's requests. The chart lists several instances of this policy, such as:

> On June 12, 2015, Ostby requested by kite, "I need to see Mental Health again ASAP. I got some pretty messed up stuff going on in my head. I'm serious. Thank you." Although Ostby was scheduled for mental health examination, it did not occur. The persons responsible were County officials responsible for ensuring affirmative responses to Ostby's kites.

(Doc. 130 at 13). Yet another of the alleged unconstitutional policies was to not classify inmates who were a risk to themselves or others. The chart lists instances of this policy, such as:

> On May 11, 2015, there was a report that Ostby should be continued to be monitored and handled with caution because his behavior was unpredictable. Ostby should have been placed in a unit where he could have been continually monitored by trained staff knowledgeable of his medical and psychiatric background. Persons responsible were County officials responsible for classification.

(Doc. 130 at 9).

Interrogatory 17 asked for the who, what, where, when, and how of the alleged violations of the duty of care. In response, the Plaintiffs stated the County failed to abide by its policy to provide "health care comparable to that available to the citizens in the surrounding community, Policy 6-10-01.00," failed to abide by its policy to remove items with which suicidal inmates can hang themselves, Policy 6.01 – 10.2(4), failed to abide by its policy that "inmates are able to express medical complaints daily for review by qualified medical personnel to insure appropriate medical attention and to enable early detection of illnesses that may appear minor but are serious in nature, Policy 6-01-05.01," and several more policies. (Doc. 130 at 5-7).

Similar to the constitutional violations, the chart lists specific instances of violations of the duty of care, such as:

> On May 9, 2015, RiverStone noted that Ostby had chronic back pain severe spondylosis, disc herniation, and spinal stenosis. Ostby should have received treatment for his chronic pain syndrome, as required by County Policy. Removing him from chronic pain treatment was a known risk factor to increased mental distress during detention. Persons responsible were County officials who reviewed Ostby's medical information.

> On June 9, 2015, Ostby reported by kite that he was, "Hoping to see the provider soon about my back and possibly getting some meds and extra mat. My back is getting worse due to my scoloisos fractured vertebrae blown out L4 and L5 discs. [] doesn't help and am allergic to Tylenol." Ostby reminded the County that he had intense chronic low back pain. Although he was told that he would see a medical and a mental health provider earlier, this did not occur. Even his request for an extra mat was denied. Persons responsible were County officials responsible for ensuring affirmative response to Ostby kites.
>
> On June 23, 2015, Ostby reported by kite, "I was told 4 weeks ago that I would be able to see the doctor for my back an [sic] still have not. It is getting worse it hurts to walk, lay sit. I go to sleep at night wishing I'd wake up paralyzed. Do I need my parent to contact the ACLU or their attorney before I get seen or what. I need to see a doctor please. I go numb from shoulder blade to finger and [?] feels like I'm being ripped apart, shooting pain down leg." Instead of responding to his multiple requests for mental health, medical and drug treatment the County ignored those requests. While Ostby was again told that he would be scheduled for care, the County did not schedule him with a provider. Persons responsible were County officials responsible for ensuring affirmative response to Ostby kites.

(Doc. 130 at 9, 12, and 13). Yellowstone County correctly points out the Plaintiffs regularly fail to name a specific individual, but the Plaintiffs answered that omission in their discovery responses. The Plaintiffs stated that they are "without information as to who at the County" was responsible for failing to adopt certain policies or adopting inadequate policies, and noted the legal claims are alleged against the County itself, not individuals. (Doc. 130 at 20).

The Court holds the Plaintiffs' responses sufficiently answered Yellowstone County's interrogatories. The motion to compel is denied.

### B. Motion to vacate

Yellowstone County argues the motions deadline and trial date should be vacated because it needs the answers to the interrogatories before it can properly file a motion for summary judgment, and if the Court grants the motion for summary judgment, no trial will be needed. The motion to vacate is denied because the Court has denied the motion to compel.

### C. Attorney fees

If a motion to compel is denied, the Court must award reasonable expenses incurred to the party opposing the motion. Fed. R. Civ. P. 37(5)(B). But the Court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust. Fed. R. Civ. P. 37(5)(B).

The Plaintiffs also filed a motion for attorney fees under 28 U.S.C. § 1927, which provides for expenses incurred due to litigants who unreasonably and vexatiously multiply the proceedings.

The Court denies the request for expenses because the circumstances make an award of expenses unjust. As Yellowstone County argues, its interrogatories, known as contention interrogatories, are sometimes allowed late in discovery to narrow issues. *Bohannon v. Honda Motor Co.*, 127 F.R.D. 536, 538 (D. Kan. 1989). The Plaintiffs objected to the interrogatories but nevertheless answered them. The County found the answers to be evasive or incomplete, but as explained

above, the Court held the answers were sufficient albeit not as perfectly formed as the interrogatories requested. The motion to compel may not have been successful but it was also not wholly unjustified.

### III. Conclusion and order

It is hereby ordered:

1. Yellowstone County's motion to compel (Doc. 123) is denied;

2. Yellowstone County's motion to vacate (Doc. 125) is denied; and

3. The Plaintiffs' motion for expenses (Doc. 134) is denied.

DATED this 17th day of June, 2020.

SUSAN P. WATTERS
United States District Judge